## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**EMANUEL ROSS, individually and
on behalf of DR, a minor child,**

      **Plaintiff,**

**v.**                                    **Case No.:  3:18-cv-00537**

**DANIELLE RAKES,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

On February 12, 2018, Plaintiff Emanuel Ross ("Ross") filed a *pro se* Complaint in the United States District Court for the Eastern District of New York seeking money damages from the defendant, who is the mother of Ross's minor child, for alleged malicious interference in his father-child relationship. (ECF No. 1). On April 9, 2018, the New York District Court transferred the case to this Court pursuant to 28 U.S.C. § 1406(a). (ECF No. 14). Currently pending are Defendant's Answer and Counterclaims, (ECF No. 10), and Plaintiff's Motion to Dismiss Defendant's Counterclaims and Strike Defendant's Answer. (ECF No. 13). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

It is well settled that United States District Courts have an independent obligation at the commencement of a civil action to determine whether subject matter jurisdiction

exists; therefore, the undersigned has considered *sua sponte* whether this Court has jurisdiction over the issues raised in the pleadings. Having thoroughly considered the matter, and for the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED** for lack of subject matter jurisdiction; Plaintiff's pending motions be **DENIED**, as moot; Defendant's counterclaims be **DISMISSED** for failure to state a cognizable claim; and this action be **REMOVED** from the docket of the court.

## I.   Relevant History

Ross met Defendant Danielle Rakes ("Rakes") at Marshall University in Huntington, West Virginia in 2006, and she became pregnant with Ross's child. (ECF No. 1 at 2*).* Ross describes Rakes's pregnancy as the result of an ongoing relationship between him and Rakes, while she denies that they had a relationship and characterizes their involvement as a "one night stand." (ECF No. 1 at 2; ECF No. 10 at 2). Either way, the interactions between Rakes and Ross were strained from the beginning and deteriorated over time. After their child, DR, was born on October 16, 2007, Rakes moved with DR to Columbus, Ohio, where she claims Ross failed to maintain consistent contact with DR. (ECF No. 10 at 3). Ross in turn accuses Rakes of relocating to keep DR away from him. (ECF No. 1 at 3). In 2008, after months of bickering over DR, an action to determine child custody and visitation was filed in the Family Court of Cabell County, West Virginia, having Civil Action No. 08-D-790. (ECF No. 10 at 13-20, 22). Since the inception of the case, Ross and Rakes have returned to the Cabell County Family Court on multiple occasions to litigate disagreements over visitation and support. Nevertheless, according to Rakes, she is and always has been the primary caretaker and custodial parent of DR. (*Id.* at 2). Ross is required to make monthly child support payments and is allowed to

have periodic supervised Skype calls with DR.

In February 2018, Ross, then a resident of Brooklyn, New York, sued Rakes, a resident of Huntington, West Virginia, in the Federal District Court in New York. Ross alleged that Rakes had perpetrated a "malicious scheme to destroy [Ross's] constitutionally-protected fundamental interest in the nurture, upbringing, companionship, care, and custody of his child." (*Id.* at 1). The Complaint detailed Ross's ongoing battle to obtain custody over, and visitation rights with, his biological child, DR.

In her answer to the Complaint, Rakes included a number of filings from the Cabell County Family Court. These included an October 2014 Temporary Order in which Family Court Judge Patricia Keller ordered Ross to pay child support and arranged for weekly Skype calls between Ross and DR. (ECF No. 10 at 65). Judge Keller noted that Ross had gone a significant amount of time without exercising parenting contacts; thus, she felt that a phase-in relationship between the child and Ross would be best. (*Id.* at 65). Judge Keller planned to revisit the issue at the next hearing, which was set in January 2015. (*Id.* at 65-66).

In January 2015, Judge Keller entered a Second Temporary Order, noting that Ross and Rakes had been arguing during the Skype calls and admonishing them not to engage in any discussion other than that necessary to initiate the sessions. (ECF No. 10 at 40). Judge Keller continued the calls and indicated an intention to revisit custody and child support issues at the next hearing in April 2015. (*Id.* at 41). In April 2015, Judge Keller awarded "parenting time" to Ross. (*Id.* at 48).

On October 27, 2015, Judge Keller entered a "Final Order" indicating that Ross had failed to meaningfully participate in telephone calls with DR and adding that the child's guardian ad litem had recommended that the call schedule be suspended. (*Id.* at 22).

Judge Keller noted that Ross was not present at the hearing, despite being informed in advance of the proceeding. Judge Keller ruled that Rakes no longer had "an ongoing duty to make the child available for telephone calls with Mr. Ross." (*Id.* at 23). Judge Keller also advised the parties that as the order was a final order, it could be appealed to either the Circuit Court of Cabell County, or the Supreme Court of Appeals of West Virginia. (ECF No. 10 at 24).

In July 2016, Ross filed a Petition for Modification of the October 2015 Final Order in the Family Court of Cabell County, West Virginia. (ECF No. 1-2 at 2-5). In his petition, Ross claimed that he did not receive notice of the hearing that led to the final order and stated that he now resided in Brooklyn, New York. (*Id.* at 3). He asserted that Rakes had repeatedly opposed his efforts to spend time with DR and had taken actions designed to "alienate" him from DR. He listed a number of allegations against Rakes in support of his petition. (*Id.* at 3-4). Ross argued that Rakes's conduct entitled him to modification of the October Final Order. (*Id.* at 4). Ross requested that he be given liberal parenting time, that Rakes be "compelled to cooperate" with him in establishing a relationship with DR, and that he be granted attorney fees and court costs. (*Id.*). This petition for modification was apparently unsuccessful, as the record included a later appeal by Ross to the Circuit Court of Cabell County in which he argued that an October 2016 Final Order issued by the Cabell County Family Court violated his due process rights because he was not permitted to testify and present evidence in support of his petition for modification. (ECF No. 10 at 60). In January 2017, the Circuit Court declined to overrule the Family Court's Final Order denying Ross's petition for modification. (*Id.*)*.*

In the present action, Ross complains that Rakes has employed "numerous tactics, schemes, allegations and even the court system itself" to keep him away from DR. (ECF

No. 1 at 3). He contends that Rakes acted deliberately to keep him separated from DR by avoiding calls and relocating without notice. (*Id.*). Ross asserts that as "a direct result of [Rakes's] malicious actions and false representations, Ross has been deprived of the love and companionship of his child." (*Id.* at 9).

Rakes filed an Answer to the Complaint in March 2018, asking the Court to dismiss all of the claims against her and asserting a variety of counterclaims against Ross. (ECF No. 10). Rakes contends that the true impediment to Ross's relationship with DR is his sporadic presence in DR's life. (*Id.* at 1). Rakes asserts that she has been in conformance with the final court order from the Family Court of Cabell County, West Virginia since its issuance in October 2015, and that Ross's Complaint is thus groundless. (*Id.* at 3). Rakes demands $750,000 in compensation for the "unfounded" portrayal of her in Ross's Complaint and for the emotional distress she has experienced due to this lawsuit. (*Id.* at 1).

Ross filed a motion on March 27, 2018 requesting the Court to enter a default judgment pursuant to Federal Rule of Civil Procedure 55(a), to dismiss and strike Rakes's answer and counterclaims, and to award damages for the time and effort associated with preparing his motion. (ECF No. 13). In April 2018, the Eastern District of New York determined that the case was improperly filed in New York as it "concerns a West Virginia family court matter" and transferred the case to this Court pursuant to 28 U.S.C. § 1406(a). (ECF No. 14).

## II.    **Discussion**

Ross asserts six counts against Rakes: intentional infliction of emotional distress (Count One); defamation (Count Two); violation of fundamental rights under New York law and the New York and United States Constitutions (Count Three); breach of fiduciary

duty (Count Four); negligence and negligent infliction of emotional distress (Count Five); and fraud in the inducement (Count Six). Ross asks for $175,000 in compensatory damages; $100,000 in damages for DR; additional punitive damages; attorney fees and costs; other damages sufficient to compensate Ross and DR for Rakes's conduct; and "any other and further relief deemed just and proper." (ECF No. 1 at 9-15).

Subject matter jurisdiction in the United States District Courts exists when a "federal question" is presented, or when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, "[a] district court has 'an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it.'" *Greene v. Joyner,* No. JFM-17-688, 2017 WL 1194175, at *2 (D. Md. Mar. 30, 2017) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)). Whether this Court has jurisdiction depends upon the allegations contained in the complaint. *See Pinkley,* 191 F.3d at 399 (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936) (holding "the party who seeks the exercise of jurisdiction in his favor ... must allege in his pleadings the facts essential to show jurisdiction")). If the allegations fail to establish subject matter jurisdiction, the Court must dismiss the action. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("As we have recognized, a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction.").

### A. Counts One, Two, and Three

Ross asserts subject matter jurisdiction in this Court on the basis of diversity of citizenship, alleging that his claims involve "substantially more than $75,000" and are

between citizens of different states. (ECF No. 1 at 2). However, it has long been established that there exists an exception to the diversity jurisdiction of the federal courts for matters concerning "the whole subject of the domestic relations of husband and wife, parent and child," [which] "belongs to the laws of the states and not to the laws of the United States, and should be handled by the state courts and not by the courts of the United States." *Delavigne v. Delavigne*, 402 F. Supp. 363, 366 (D. Md. 1975), *aff'd*, 530 F.2d 598 (4th Cir. 1976) (citing *Barber v. Barber*, 62 U.S. 582, 584 (1859); *Ex parte Burrus*, 136 U.S. 586, 594 (1890)). The exception is grounded, not in the Constitution, but as a matter of "statutory construction" of the federal diversity statute. *Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992). Domestic relations cases, including child custody and visitation matters, are generally not heard in federal court, because "State courts ... have the experience to deal with this specific area of the law." *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) (noting that "federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters") (citing *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980)). The domestic relations exception recognizes the "local nature of domestic relations problems, the strong interest of the states in addressing such questions without interference, and the expertise of local agencies and courts in monitoring and resolving domestic relations matters." *Huynh Thi Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978).

Recently the United States Supreme Court clarified the limits of the domestic relations exception. In *Ankenbrandt v. Richards*, the Court overturned a lower court decision which dismissed, under the domestic relations exception, a case involving tort allegations brought by the mother of two young children in which she charged her ex-husband with sexually abusing the two girls. The Supreme Court found that the domestic

7

relations exception should not apply in such a case because the status of the domestic relationship had already been determined as a matter of state law and the status of the relationship had "no bearing on the underlying torts alleged." *Ankenbrandt,* 504 U.S. at 706. The *Ankenbrandt* Court narrowed the scope of the domestic relations exception, but confirmed its continuing validity stating, "we are unwilling to cast aside an understood rule that has been recognized for nearly a century and a half." 504 U.S. at 694–95. In *Marshall v. Marshall,* the Supreme Court again, if somewhat obliquely, reaffirmed the continuing validity of the domestic relations exception. 547 U.S. 293, 308. The *Marshall* case involved the "probate exception" a closely related "kin" to the domestic relations exception. *Id.* There, the Supreme Court reiterated that the "conclusion that a domestic relations exception exists" rests on "a matter of statutory construction not on the accuracy of the historical justifications on which [the exception] was seemingly based." *Id.* at 307 (citing *Ankenbrandt,* 504 U.S. at 700).

Courts have described the domestic relations exception as consisting of both a "core and a penumbra." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). The "core" consists of cases in which the plaintiff is seeking one or more of the "distinctive forms of relief" associated with the domestic relations jurisdiction such as "the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Cassens v. Cassens*, 430 F. Supp. 2d 830, 836 (S.D. Ill. 2006). The "penumbra" by contrast, consists of "ancillary" proceedings that should have been litigated in the original domestic relations proceeding. *Friedlander*, 149 F.3d 739 at 740.

An additional doctrine counsels abstention in this case, the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is based upon the holdings of the Supreme Court in two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia*

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction to overturn a state court judgment, even when the complainant alleges violations of constitutional rights. In effect, the *Rooker-Feldman* doctrine precludes federal court action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005).

In Counts One and Two, Ross makes state tort claims against Rakes. He asserts claims of intentional infliction of emotional distress and defamation. (ECF No 1 at 9-10). While these claims do not seek distinctive forms of relief obviously barred by the domestic relations exception, further examination of Ross's Complaint makes it clear that Counts One and Two are not independent of the longstanding custody and visitation battle between the parties; rather, these claims are avenues by which Ross seeks to relitigate and litigate past and future custody and visitation issues, which are issues reserved to the State of West Virginia.

Lower courts have generally viewed the Supreme Court rulings in *Marshall* and *Ankenbrandt* as establishing that the domestic relations exception is to be applied narrowly. *See e.g., Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015) ("The message from *Ankenbrandt* and *Marshall* is clear: the domestic-relations exception is narrow, and lower federal courts may not broaden its application."). As such, several lower courts have seen fit to uphold tort claims in the face of jurisdictional challenges under the domestic relations exception. *See Norton v. McOsker*, 407 F.3d 501, 505 (1st Cir. 2005) (considering claims of promissory estoppel and intentional infliction of emotional distress); *see also Tilley v. Anixter Inc.,* 283 F. Supp. 2d 729, 737 (D. Conn.

9

2003) (upholding claim by former wife against ex-husband for intentional infliction of emotional distress as it had "little bearing or effect" on domestic court proceedings); *Jones v. Jones*, 206 F. Supp. 3d 1098, 1107 (E.D. Va. 2016) (upholding claim by ex-wife against husband as it was a claim for breach of contract and did not "involv[e] the elements of the domestic relationship").

In 1985, the Fourth Circuit considered the domestic relations exception's application to a claim for intentional infliction of emotional distress made by an ex-husband against his former wife. *Raftery v. Scott*, 756 F.2d 335, 338 (4th Cir. 1985). The Fourth Circuit first noted, "[a] district court may not simply avoid all diversity cases having intrafamily aspects. Rather it must consider the exact nature of the rights asserted or of the breaches alleged." *Id.* (quoting *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir.1980)). The *Raftery* Court found that the plaintiff's claim for intentional infliction of emotional distress against his ex-wife for her actions in actively attempting to subvert his relationship with his son was not subject to the domestic relations exception. *Id.* at 337-338. The Fourth Circuit reasoned that, "[a] decision by a federal court not requiring the adjustment of family status or establishing familial duties or determining the existence of a breach of such duties, does not contravene the domestic relations exception to federal diversity jurisdiction." *Id.* at 338 (citing *Kelser v. Anne Arundel County Dept. of Social Services*, 679 F.2d 1092 (4th Cir.1982)). In the concurring opinion, Judge Michael agreed with the result reached by the majority, but worried that it would have the effect of undermining the domestic relations exception, stating "I simply cannot agree that the plaintiff, for future cases, under these circumstances should be permitted to avoid the exception." *Raftery*, 756 F.2d at 344 (Michael, J concurring).

Despite the narrow application generally afforded to the domestic relations

exception as exemplified by *Raftery*, courts have not hesitated to dismiss complaints that, while appearing to be truly independent tort claims, are in reality merely attempts to relitigate matters inside the core of the domestic relations exception. In *Kahn v. Kahn*, the Eighth Circuit considered a case involving an ex-wife suing her former husband for the torts of breach of fiduciary duty, conversion, constructive fraud and fraud. *Kahn v. Kahn,* 21 F.3d 859, 860 (8th Cir. 1994). There, the Court found that the claims, "although drafted to sound in tort," and thus independent of the type of proceedings proscribed from federal subject jurisdiction matter by the domestic relations exception, were, in fact, "inextricably intertwined" with the prior divorce proceedings and thus subject matter jurisdiction was not appropriate. *Id.* at 861. Similarly, in *McLaughlin v. Cotner,* the Sixth Circuit dismissed a tort claim for breach of contract where the plaintiff was merely "attempting to disguise the true nature of the action." *McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999). In *McLaughlin*, the Sixth Circuit found that the case was distinguishable from *Ankenbrandt,* as the plaintiff's claim for breach of contract would in effect require interpreting the terms of a divorce decree. *Id.* Therefore, subject matter jurisdiction was not appropriate, and the Sixth Circuit upheld the District Court's *sua sponte* dismissal of the case. *Id.* at 415. The Tenth Circuit similarly held that a claim for breach of contract was subject to the domestic relations exception. *Wyttenbach v. Parrish*, 496 F. App'x 796, 797 (10th Cir. 2012). While noting that the plaintiff arranged his complaint so that it "sounds in contract," the Tenth Circuit determined that there was no question what the plaintiff really wanted was to have a federal court "evaluate [the defendant's] obligations under child custody arrangements negotiated in and supervised by a state court, hold that [the defendant] failed to comply with her obligations, and tell her to refund the money he's paid under their agreement." *Id.*

Thus, while it is clear that the domestic relations exception is narrowly construed, it is equally clear that when deciding whether a lawsuit is subject to the exception, courts have consistently looked beyond the mere form of the pleadings to determine the true nature of the complaint. *See Cassens* 430 F. Supp. at 836-38. (not dismissing claims that as a practical matter seek relief barred by the domestic relations exception would "effectively eviscerate the exception."); *see also McCracken v. Phillips,* 105 F.3d 669 (10th Cir. 1997) (plaintiff's claims of fraud and abuse of privacy dismissed under domestic exception as it would require court to "reopen" a divorce proceeding); *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988) (citing *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981)) ("[F]ederal courts do not have jurisdiction over a claim where the tort damages action is a mere pretense and the suit is actually concerned with custody issues."); *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1216 (6th Cir.1981) ("It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated.") (dismissing case as subject to domestic relations exception); *Surface v. Dobbins*, No. 3-87-01479, 1993 WL 1318609, at *3 (S.D. Ohio Sept. 23, 1993) (noting that only an "incautious reader" of *Ankenbrandt* would conclude that suits in federal court which effectively request the same relief as that barred by the domestic relations exception are not subject to the exception); *Mauro v. Mauro,* 762 F. Supp. 173, 176 (E.D. Mich. 1991) (dismissing case where suit was a "mere pretense and the action here is an attempt to permanently alter custody and/or visitation."); *Abessolo v. Smith*, No. 1:11-CV-680, 2012 WL 668773, at *3 (S.D. Ohio Feb. 29, 2012), report and recommendation adopted, No. 1:11-CV-00680, 2012 WL 1564321 (S.D. Ohio May 2, 2012) ("Ultimately, [p]laintiff's suit stems from an ongoing child custody and protection case in which [p]laintiff, the biological father, is unhappy with both the process

12

and the result of past and current state judicial decisions."); *Washington v. Deline*, No. CIV.A. ELH-15-853, 2015 WL 1522748, at \*2 (D. Md. Apr. 1, 2015) ("It may be appropriate for the federal courts to decline to hear a case involving elements of the domestic relationship, even when divorce, alimony or child custody is not strictly at issue."); *Kucera v. Black*, No. 4:12-CV-15218, 2012 WL 6200332, at \*2 (E.D. Mich. Dec. 12, 2012), aff'd (Oct. 7, 2013) ("this is essentially a child custody case that Plaintiff has dressed up as a tort case.").

Courts in this circuit have taken a fact-specific and practical approach to determining whether a purportedly independent claim is instead merely an attempt to bypass the domestic relations exception. For example, in *Griessel v. Mobley,* the Middle District of North Carolina considered a case that involved a malicious prosecution suit made by a plaintiff who was embroiled in a custody battle with his ex-wife. 554 F. Supp. 2d 597, 600 (M.D.N.C. 2008). The *Griessel* Court noted that the malicious prosecution claim sounded in tort and that the Fourth Circuit had previously held that independent tort claims were not subject to the domestic relations exception. *Id.* at 602-603 (citing *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980)). However, after an extended analysis of the facts of the case, the District Court held that because the malicious prosecution claim arose "out of the parties' ongoing activities in relation to the matter of child custody and visitation," the "essential or core of the malicious prosecution suit" was "sufficiently related to the ongoing custody and visitation dispute so that this Court should not assume jurisdiction over it." *Id.* at 602, 604. Similarly, the Northern District of West Virginia held that a plaintiff's suit was subject to the domestic relations exception where he drafted his complaint so that it raised independent constitutional claims but, "what he really seeks is the invalidation of a state court custody decree." *Palattella v. People of W. Virginia*, No.

13

CIV.A. 3:05-CV-76, 2006 WL 839510, at *3 (N.D.W. Va. Mar. 27, 2006) (citing *McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999)). In *Palattella* and *Griessel*, the courts went beyond the mere form of the complaint to consider the true nature of the action, as well as the practical effects of the relief sought.

Here, Ross's tort claims appear at least facially independent of the prior custody determinations. However, upon examining the facts that form the basis of his claims, it is clear that he is merely "attempting to disguise the true nature of the action." *McLaughlin*, 193 F.3d at 413. The facts on which Ross relies are "inextricably intertwined" with the prior custody proceedings. *Kahn,* 21 F.3d at 860. Ross's lawsuit against Rakes is merely a continuation of his previous attempts to win custody and visitation rights, based on the same complaints that he has levelled against Rakes in state courts.

As the basis for his emotional distress claim, Ross states that Rakes has refused to follow the stipulated visiting procedures, denied him access to his daughter, attempted to "extort and humiliate Ross in anyway [sic] possible," and encouraged DR to develop a relationship with Rakes's long-term partner in a malicious attempt to "demean and embarrass Ross." (ECF No. 1 at 2-5). As the basis for his defamation claim, Ross asserts that Rakes has made false and malicious statements about him on "numerous occasions." (*Id.* at 10). It seems the gravamen for Ross's defamation claim is an allegation made by Rakes, which Ross learned of during the custody proceedings, that Ross had abused DR. (*Id.* at 4). Ross requests $100,000 in relief for Count One, and $25,000 for Count Two. (*Id.* at 10-11). He also asks for punitive damages "in a sum large enough to punish Rakes for her conduct and *to deter Rakes ...  from repeating this conduct.*" (*Id.*) (emphasis added).

14

Similarly, in his July 2016 petition for modification, Ross raised with the Family Court what is essentially a condensed version of the claims set forth in his Complaint herein. Ross accused Rakes of "alienating [DR's] affections away from him; relocating [DR] to distant locations without giving him proper notification; portraying him in a negative light to [DR]; repeatedly denying and frustrating his attempts to have visitation and contact with [DR]," among other complaints. (ECF No. 1-2 at 3-4). Because of these actions, Ross argued, Rakes had created a substantial change in circumstances entitling him to modification of the terms of the Final Order issued in October 2015. (*Id.* at 4). Ross's petition for modification was denied by the Family Court in October 2016, and the order was affirmed by the Circuit Court of Cabell County, West Virginia in January 2017. (ECF No. 10 at 60-63).

Now Ross asks this Court to impose monetary penalties on Rakes both to compensate him for Rakes's alleged prior misbehavior and to "deter" Rakes from continuing the conduct that Ross has repeatedly litigated against unsuccessfully in the Cabell County Family Court. Thus, Ross seeks to interject this Court into the ongoing visitation and custody proceedings. As Ross's tort claims rest on the premise that Rakes has fraudulently and maliciously withheld the companionship of Ross's daughter from him, it would be impossible for this Court to disentangle Ross's many allegations of improper behavior on Rakes's part without "reopening" the prior custody and visitation determinations and reviewing the validity of the Cabell County Family Court's rulings on those matters. *Drewes* 863 F.2d at 471. If Ross truly believes Rakes has been violating the custody order of the Family Court of Cabell County by improperly refusing visitation and by repeated false statements and threats, (ECF No. 1 at 11-12), then the appropriate forum to raise his concerns is not in Federal Court by way of a civil suit for money damages, but

15

is in the Family Court of Cabell County, which continues to have exclusive jurisdiction over those matters. *See* W. Va. Code Ann. § 48-20-202; *see also Haller v. Haller,* 481 S.E.2d 793, 800 (1996).

Ross previously asked the Family Court to modify its Final Order so that Rakes would be "compelled to cooperate" with him; it declined to do so. (ECF No 1-2 at 4; ECF 10 at 60). Now Ross seeks to achieve the same result through the machination of a federal lawsuit that takes the same facts he relied on in state court proceedings and applies a new label to them. The "exact nature of the rights asserted or of the breaches alleged," the particular facts of this case, and the practical results of its requested relief, indicate that it is merely "dressed up as" a tort case, and that the relief actually sought is federal review of a custody issue. *Raftery,* 756 F.2d at 338; *Kucera*, No. 4:12-CV-15218 at *2. By entertaining the Complaint, this Court ultimately would find itself reploughing the same terrain covered by the Family Court of Cabell County. Deciding the case, moreover, would have the practical, (indeed intended), effect of executing an "adjustment of family status," "establishing familial duties" and "determining the existence of a breach of such duties." *Raftery,* 756 F.2d at 338. Doing so would upset the comity between state and federal courts protected by the *Rooker-Feldman* doctrine and would intrude into the local domain of custody disputes against the counsel of the domestic relations exception.

With respect to Count Three, Ross claims that Rakes violated New York law and Ross's rights under the Fourteenth Amendment to the United States and New York Constitutions by impeding his participation in the "nurture, upbringing, companionship, care and custody, of his child." (ECF No. 1 at 11). For the reasons previously stated, Ross's claim in Count Three is likewise barred by the domestic relations exception, as issues of custody are plainly among the types of cases comprising the core of the exception.

*Cassens*, 430 F. Supp. at 836. To the extent Ross disagrees with the current custodial disposition of DR as decided by the Family Court of Cabell County, his remedy must be pursued in that court.

Even assuming that questions related to Ross's constitutional right to the custody of his child did not involve determinations subject to the domestic relations exception, his claim in Count Three would fail as Rakes is not a state actor. The Fourteenth Amendment establishes an "essential dichotomy" between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which "however discriminatory or wrongful," is not subject to the Fourteenth Amendment's prohibitions. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974). The Fourteenth Amendment's prohibitions thus apply only to the actions of state actors and "not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). A private party may be deemed to be a "state actor" only if the party's actions are "fairly attributable to the state." *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). As Rakes is a private citizen, and Ross does not allege that she acted as anything but a private citizen, his claim that she acted in violation of the Fourteenth Amendment does not meet the state action requirement.

Therefore, for the reasons set forth above, the undersigned **FINDS** that this Court lacks subject matter jurisdiction over Counts One, Two, and Three of the Complaint.

### B. Counts Four and Five

In Counts Four and Five, as well as in Count One, Ross asserts claims on behalf of his minor child, DR. Ross seeks money damages for DR from her custodial parent, Rakes, claiming intentional infliction of emotional distress, breach of fiduciary duty, and negligent infliction of emotional distress. (ECF No. 1 at 9-10, 12-14). It is well-settled in

17

this circuit that "non-attorney parents generally may not litigate the claims of their minor children in federal court." *Myers v. Loudoun Cty.* Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x. 199, 200 (4th Cir. 2014). Even if it were appropriate and permissible for Ross to file these claim on his daughter's behalf, diversity jurisdiction would not exist given that Rakes and her daughter are both residents of West Virginia. Accordingly, this Court lacks subject matter jurisdiction over any claims brought on behalf of DR against Rakes. 28 U.S.C.A. § 1332. Accordingly, the undersigned **FINDS** that Ross cannot prosecute Count One, to the extent it includes a claim on behalf of DR, and Counts Four and Five and , in any event, the Court lacks subject matter jurisdiction over Counts One, Four, and Five of the Complaint.

### C. Count Six

In Count Six, Ross asserts a claim of fraud in the inducement against Rakes. (ECF No. 1 at 14). Ross alleges that Rakes "made a misrepresentation of material fact" by offering to forego Ross's court-ordered child support payments in exchange for his agreement to surrender parental rights over DR. (*Id* at 5-6). Ross contends that Rakes never intended to honor this agreement and, instead, made the statement to fraudulently induce him into paying $6,000 in attorney's fees in order to complete the process of surrendering his parental rights. (*Id.* at 14). Ross raised this same issue in his petition for modification in the Cabell County Family Court. (ECF No. 1-2 at 4).

As issues of child support and surrender of parental rights are intricately connected to the issue of child custody, and this specific incident was already addressed in the Family Court of Cabell County, Count Six is subject to the domestic relations exception and *Rooker-Feldman* doctrine. Additionally, Ross only claims $6,000 in damages. Without

18

the benefit of the other counts, the amount in dispute in this count is far less than the required jurisdictional sum of $75,000. Therefore, diversity jurisdiction does not exist over this remaining count. 28 U.S.C.A. § 1332.

Moreover, a fundamental defect exists in Ross's claim that prevents it from being legally cognizable. The proposed agreement which Ross alleges Rakes violated was void as against public policy. "An initial child support order is entered for the benefit of the child or children involved. The duty owed is from the parent to the child, rather than between the two parents." *Lang v. Iams*, 201 W. Va. 24, 28-29 (1997). "Thus, any attempt by the parents to modify the order by agreement, regardless of the present factual variations as to the character of the agreement, is null and void." *Id.* at 29; *see also Wyatt v. Wyatt*, 185 W. Va. 472, 475 (1991) ("The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support); *see also In re Ryan B.*, 224 W. Va. 461, 467 (2009) ("This Court has previously stated that child support obligations are not only responsibilities parents owe to their children, they are also rights which belong to children. ... Allowing a parent who voluntarily relinquishes his/her parental rights to avoid this right that belongs to the child goes against the overall goal of the child welfare statutory scheme and is in opposition to our well established case law.") (internal citations omitted). A party rendering performance of a contract that is void for public policy reasons generally is not entitled to restitution. Restatement (Second) Contracts § 197 ("[A] party has no claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy unless denial of restitution would cause disproportionate forfeiture."); *see also Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569–70 (3d Cir. 2002) ("A contract term or condition that violates public policy is

void and is thus unenforceable."). As such, Ross has no right to restitution for the expenses he incurred in attempting to prepare a contract that would exchange child support payments for the surrender of his parental rights.

Therefore, the undersigned **FINDS** that the Court lacks subject matter jurisdiction over Count Six of the Complaint and further **FINDS** that Count Six fails to state a legally cognizable claim.

### D. Counterclaims

Rakes asserts counterclaims seeking monetary damages in the amount of $750,000 against Ross. (ECF No. 10 at 10). Rakes contends that by filing this lawsuit, Ross has caused her "extreme embarrassment" and a "lack of sleep." She alleges that in his complaint he portrays her as a criminal on an "unfounded basis" and "ruined her character" by lying about her and her ability to care for her daughter. She additionally argues that being served the complaint at work resulted in "extreme embarrassment." (*Id.*). In March 2018, Ross filed a Motion to Dismiss Rakes's Counterclaims under 12(b)(6). (ECF No. 13).

While this Court is required to liberally construe *pro se* documents, holding them to a less demanding standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Rakes demands judgment against Ross, but does not actually assert any cause of action. She merely complains that the lawsuit filed by Ross has caused her stress, worry, and embarrassment. Such vague and conclusory assertions do not create a legally cognizable cause of action. Even if they could be construed to state a cause of action, all

of the alleged misconduct attributed to Ross arises from the Complaint he has filed in this action. Therefore, the litigation privilege would preclude Rakes's claim for damages. *See Collins v. Red Roof Inns, Inc.,* 211 W. Va. 458, 462 (2002) (recognizing that the litigation privilege protects a civil party from a claim for damages filed by an opposing party alleging defamation and related misconduct during a civil action when the alleged wrongdoing arises from the civil action itself). Therefore, the undersigned **FINDS** that the counterclaim asserted by Rakes fails to state a cognizable claim.

## III.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED** for lack of subject matter jurisdiction; the motions be **DENIED**; the counterclaims be **DISMISSED** for failure to state a claim, and this action be **REMOVED** from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Federal Rules of Civil Procedure 6(d) and 72(b), the parties shall have fourteen days (for filing of objections) plus an additional three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver

21

of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the parties.

**FILED:** October 30, 2018

Cheryl A. Eifert
United States Magistrate Judge